The settlements made by all the plaintiffs except Alexander, and their acquittances to the administrator, undoubtedly bar them, especially after such a lapse of time and under the other circumstances of the case. The bill takes no notice of those settlements (565) or of the account returned by the administrator, and, prima facie, those plaintiffs could not call for another account, since they in no way impeach that formerly made between them and the administrator. But if the charges in respect of the negro purchased *Page 391 
by the administrator could be regarded as impeaching those settlements in that respect, and as laying a foundation for a decree to open the account, they would not furnish a sufficient ground for that purpose. It is true that an administrator's purchase at his own sale is liable to the objection of the next of kin, at their mere election. But they must come in reasonable time for that purpose, and must have done nothing to confirm the purchase, as by settling with the administrator, with the purchase money forming an item of the account or otherwise inducing the administrator to consider the thing purchased as his own. In this case, indeed, he had much right to think that from the beginning, as his purchase was made openly and in the presence of most of the next of kin, who sanctioned his bidding by bidding against him or by their silence; and, unquestionably, his subsequent accounting with them for the price, without any unfairness in the settlement, and with a knowledge on the part of the next of kin of all the facts, must be a ratification by them of what may have been before imperfect. Petty v. Harman,17 N.C. 191; Villines v. Norfleet, 16 N.C. 167. Then, as to the plaintiff Alexander, the defense is equally good. It is true that he made no settlement. But he was fully aware from the beginning that the administrator and the other children, including his coplaintiffs, denied his right to any share in the estate, upon the ground that he had been advanced by his father. For ten years he submitted to that exclusion, and the administrator proceeded to settle the estate and make distribution upon that basis. It does not appear that he, Alexander, made the least objection or set up any claim until all that had been done. Then, in November, 1832, he first made known his pretensions, so far (566) as we see, and brought a suit on the administration bond to enforce them. But he did not prosecute that suit to judgment. On the contrary, after letting it hang up for two years, he gave up that suit, and apparently also gave up his claim; for nothing more is heard of it until this bill was filed in the latter part of 1847, which is fifteen years from the time of his former suit and nearly twenty-six years after administration granted, he and the administrator living in the same neighborhood all the time. The Court holds such laches a bar to his right to an account now; and the cases just cited, besides many others, are plain authorities to that purpose. It may be remarked that the case is not at all affected by the circumstance that the share of one of the next of kin is still held by the administrator; for that is between the administrator and that portion of the next of kin, and does not keep the trust open as to the plaintiffs, as they are excluded, the one because he was not entitled to anything when the father died, and the others because each of them settled and received his or her share. The administrator may be found to account for what he has to those of the next of kin who *Page 392 
are entitled to that share and are also defendants, or to the University as representing them; but he is not liable to account for it to the plaintiffs or either of them.
PER CURIAM. Bill dismissed with costs.
Cited: Tayloe v. Tayloe, 108 N.C. 73.
(567)